IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 3:22-cr-0010-01 |
| v. | **PLEA AGREEMENT** |
| MACALLA LEE KNOTT, | |
| Defendant. | |

Pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure,

the United States of America, by its attorneys, Mac Schneider, United States Attorney for

the District of North Dakota, and Christopher C. Myers, Assistant United States

Attorney; Defendant, MACALLA LEE KNOTT, a/k/a KAYLA, and Defendant's

counsel, Tanya Johnson Martinez, agree to the following:

1.      Defendant acknowledges the Third Superseding Indictment charges

violations of Title 21, United States Code, Sections 846, 848(a), 848(b), 848(b)(2)(A),

848(c), 853, 963, 982(a)(1), and Title 18 United States Code, Sections 1503, 1512(i), and

1956(h).

2.      Defendant has read the charges and Defendant's attorney has fully

explained the charges to Defendant.

3.      Defendant fully understands the nature and elements of the charged crimes.

4.      Defendant will voluntarily plead guilty to Count One, Count Four, and

Count Five of the Third Superseding Indictment and admit the forfeiture.

5.     The parties agree this Plea Agreement shall be filed as part of the Court record and be governed by Federal Rule of Criminal Procedure 11(c). The parties specifically agree that Rule 11(c)(1)(C) does not apply. If the United States makes the non-binding recommendations specified in this Plea Agreement, then Defendant acknowledges that this agreement will have been fulfilled. Except as provided in Rule 11(c)(5), the Court's refusal to accept any or all terms of the Plea Agreement does not give Defendant a right to withdraw Defendant's guilty plea.

6.     Defendant will plead guilty because Defendant is in fact guilty of the charges. In pleading guilty to Count One, Count Four, and Count Five, Defendant acknowledges that:

From in or about January 2019 and continuously until the date of this Third Superseding Indictment, in the Districts of North Dakota, Minnesota, South Dakota, Wisconsin, Nebraska, and elsewhere,

MACALLA LEE KNOTT, a/k/a KAYLA;
JEFFREY ROBERT KNOTT;
DAVID ROBERT NOWLAN;
TIFFANY NINA KEOMANY;
TYLER NEIL PELZER;
DEMIAN HEBERT;
OLIVER LOUIS DYLLA;
████████████████████
JAMES WARREN GARNER;
ROBERT BLAIR GJEVRE; and
BRADY ROBERT LUDUSCHER

did knowingly and intentionally combine, conspire, confederate, and agree together with Joseph Paul Myers Jr.; Robert Jon Ratka; Melanie Ann Quick; and Mary Rose Thompson, currently indicted in the District of North Dakota, in Case No. 3:22-cr-00011,

and others, both known and unknown to the grand jury, to possess with intent to

distribute and distribute 500 grams or more of a mixture and substance containing a

detectable amount of methamphetamine, a Schedule II controlled substance; in excess of

5 kilograms of a mixture and substance containing cocaine, a Schedule II controlled

substance; and a mixture and substance containing a detectable amount of fentanyl[1], a

Schedule II controlled substance, in violation of Title 21, United States Code, Section

841(a)(1), and Title 18, United States Code, Section 2.

### Drug Quantity Finding

The grand jury specifically finds that to each of the named defendants, this conspiracy

moved more than 500 grams of a mixture and substance containing a detectable amount of

methamphetamine, a Schedule II controlled substance, as provided in 21 U.S.C.

§ 841(b)(1)(A)(viii). The grand jury specifically finds that to each of the named defendants,

this conspiracy moved more than 5 kilograms of a mixture and substance containing a

detectable amount of cocaine, a Schedule II controlled substance, as provided in 21 U.S.C.

§ 841(b)(1)(A)(ii).  The grand jury specifically finds that to each of the named defendants,

this conspiracy moved more than 400 grams of a mixture and substance containing fentanyl, a

Schedule II controlled substance, as provided in 21 U.S.C. § 841(b)(1)(A)(vi). These amounts

are attributable to the defendants as a result of their conduct and the conduct of other co-

conspirators that was reasonably foreseeable to them.

---

[1] 21 U.S.C. § 841(b)(1)(A)(vi):  The chemical structure of fentanyl is N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide.

Prior Convictions

In accordance with Title 21, United States Code, Sections 841 and 851, the grand jury finds the following:

Before MACALLA LEE KNOTT, a/k/a KAYLA, committed the offenses charged in this Third Superseding Indictment, MACALLA LEE KNOTT, a/k/a KAYLA, had a final conviction for the following serious drug felony for which she served more than 12 months of imprisonment and for which she was released from serving any term of imprisonment related to that offense within 15 years of the commencement of the instant offense: Controlled Substance Crime – 1st Degree Sale, in violation of Minnesota Statute § 152.021.1(1), in Stearns County, Minnesota, in Case No. 73-CR-16-6520, Judgment entered on October 26, 2017, in District Court, 7th Judicial District.

Overt Acts

In furtherance of this conspiracy and to effect and accomplish the objects of it, one or more of the conspirators committed the following overt acts:

1. Members of the conspiracy were receiving controlled substances directly from the Sinaloa cartel in Mexico. Controlled substances were imported into the United States and transported and shipped to Minnesota, North Dakota, and elsewhere in the United States for distribution. Members of the conspiracy paid money for these controlled substances directly or indirectly to Sinaloa cartel members in the United States and Mexico;

2. It was further a part of said conspiracy that the defendants and others would and did possess with intent to distribute and did distribute 500 grams or more of a

mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, within the states of North Dakota, Minnesota, and elsewhere;

3. It was further a part of said conspiracy that the defendants and others would and did possess with intent to distribute and did distribute a mixture and substance containing in excess of 5 kilograms of a detectable amount of cocaine, a Schedule II controlled substance, within the states of Minnesota, Wisconsin, and elsewhere;

4. It was further a part of said conspiracy that the defendants and others would and did possess with intent to distribute and did distribute a mixture and substance containing in excess of 400 grams of a detectable amount of fentanyl, a Schedule II controlled substance, within the states of Minnesota, Nebraska, and elsewhere;

5. It was further a part of said conspiracy that the defendants and others would and did use violence and the threat of violence to ensure payment and to attempt to conceal their activities;

6. It was further a part of said conspiracy that the defendants and others would and did use telecommunication facilities, including various smart phone applications, in an effort to hide illicit communications from law enforcement;

7. It was further a part of said conspiracy that the defendants and others would and did use United States currency in their drug transactions;

8. On September 15, 2021, co-conspirators distributed approximately 28 grams (one ounce) of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in Fargo, North Dakota;

9. On September 21, 2021, co-conspirators distributed approximately 14 grams (1/2 ounce) of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in Fargo, North Dakota;

10. On September 28, 2021, co-conspirators distributed approximately 113 grams (4 ounces) of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in Fargo, North Dakota;

11. On October 7, 2021, co-conspirators possessed approximately 453 grams (1 pound) of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, with the intent to distribute in Fargo, North Dakota;

12. On October 20, 2021, co-conspirators possessed approximately 453 grams (1 pound) of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, with the intent to distribute in Alexandria, Minnesota;

13. On October 21, 2021, co-conspirators possessed approximately 2,265 grams (5 pounds) of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, with the intent to distribute in Melrose, Minnesota;

14. On January 12, 2022, co-conspirator DAVID ROBERT NOWLAN possessed approximately 850 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, and approximately 100 grams of a

mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, with the intent to distribute in St. Cloud, Minnesota;

15. On February 24, 2022, co-conspirators possessed approximately 27 pounds of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, with the intent to distribute in Rapid City, South Dakota;

16. On April 7, 2022, co-conspirator E.A.L. possessed approximately 15 pounds of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, with the intent to distribute in Carlton, Minnesota;

17. On June 27, 2022, co-conspirator R.E.R. possessed approximately 1/2 pound of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, with the intent to distribute in St. Cloud, Minnesota;

18. On August 30, 2022, a co-conspirator possessed approximately 226 grams (1/2 pound) of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, and approximately 1,000 grams (1 kilogram) of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, with the intent to distribute in St. Cloud, Minnesota;

19. On August 30, 2022, co-conspirators possessed approximately 100 pounds of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, and approximately 9 pounds of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, with the intent to distribute in Nebraska;

20. On August 31, 2022, a co-conspirator possessed approximately 1,000 grams (1 kilogram) of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, with the intent to distribute in St. Paul, Minnesota; and

21. Defendant MACALLA LEE KNOTT, a/k/a KAYLA, was a leader, organizer, manager, and supervisor in this conspiracy;

In violation of Title 21, United States Code, Section 846; Pinkerton v. United States, 328 U.S. 640 (1946).

As to Count Four, defendant acknowledges that:

From in or about January 2019 to the date of this Third Superseding Indictment, in the District of North Dakota, Minnesota and elsewhere,

MACALLA LEE KNOTT, a/k/a KAYLA;
JEFFREY ROBERT KNOTT;
DAVID ROBERT NOWLAN;
TIFFANY NINA KEOMANY;
TYLER NEIL PELZER; and
DEMIAN HEBERT

did knowingly and willfully combine, conspire, confederate, and agree together and with others to commit an offense against the United States, specifically, to violate Title 18, United States Code, Sections 1956(a)(2)(B(i) and 1956(a)(2)(A), in that members of the conspiracy did knowingly and intentionally conduct and attempt to transfer, transmit, and transport monetary instruments or funds from the United States to Mexico as described below, which involved the proceeds of a specified unlawful activity, that is, the distribution and importation of controlled substances, in violation of Title 21, United States Code, Sections 841, 846, 848, 952, 960, and 963, (1) knowing that monetary

instruments or funds represented the proceeds of specified unlawful activity and that the transactions were designed in whole and in part to conceal the nature, source, location, ownership, or controls of specified unlawful activities, and (2) with the intent to promote a specified unlawful activity, that is, the distribution of controlled substances, in violation of Title 18, United States Code, Section 1956(h).

### Overt Acts

In furtherance of this conspiracy and to effect and accomplish the objects of it, one or more of the conspirators committed the following overt acts:

1. As alleged in Counts One and Two of this Third Superseding Indictment, which are incorporated herein by reference, during the course of and to further said conspiracy, members of the conspiracy sold controlled substances across the United States including, but not limited to, North Dakota, Minnesota, and elsewhere;

2. During the time frame of the conspiracy, members of the conspiracy imported and distributed controlled substances. Co-conspirators then conducted numerous financial transactions including, but not limited to, money order services, money transfer services, and bank transfers, using U.S. currency, and currency application systems (mobile apps) to pay for controlled substances; and

3. The purpose of transferring currency in this fashion was to promote the trafficking of controlled substances from Mexico to the United States and to conceal the nature, source, location, ownership, or control of the proceeds;

In violation of Title 18, United States Code, Section 1956(h).

At to Count Five, defendant acknowledges that:

From in or about January 2019 to the date of this Third Superseding Indictment, in the Districts of North Dakota, Minnesota, South Dakota, Wisconsin, Nebraska, and elsewhere,

MACALLA LEE KNOTT, a/k/a KAYLA,

did knowingly and intentionally engage in a Continuing Criminal Enterprise in that she violated Title 21, United States Code, Sections 841(a)(1) and 846, including, but not limited to, the violations alleged in Counts One and Two of this Third Superseding Indictment, which are incorporated herein by reference. The above-described violations were, and are, part of a continuing series of violations.

These continuing series of violations were undertaken by MACALLA LEE KNOTT, a/k/a KAYLA, in concert with at least five other persons with respect to whom MACALLA LEE KNOTT, a/k/a KAYLA, occupied a position of organizer, supervisor, and manager. These people include, but are not limited to: (1) M.A.Q.; (2) J.R.K.; (3) T.N.K.; (4) J.P.M.; (5) K.M.S.; (6) J.W.G.; (7) D.H.; (8) E.A.L.; and (9) R.E.R.

From this continuing series of violations, MACALLA LEE KNOTT, a/k/a KAYLA, obtained a substantial income.

The United States specifically alleges that MACALLA LEE KNOTT, a/k/a KAYLA, was a principal administrator, organizer, and leader of the enterprise and the enterprise moved at least 15 kilograms of a mixture and substance containing methamphetamine, 300 times the drug quantity described in 21 U.S.C. § 841(b)(1)(B);

In violation of Title 21, United States Code, Sections 848(a), 848(b), 848(b)(2)(A), and 848(c).

As to the Forfeiture Allegation, defendant admits that upon the conviction of Counts One and Four as alleged in this Third Superseding Indictment,

MACALLA LEE KNOTT, a/k/a KAYLA;
JEFFREY ROBERT KNOTT;
DAVID ROBERT NOWLAN;
TIFFANY NINA KEOMANY;
TYLER NEIL PELZER;
DEMIAN HEBERT;
OLIVER LOUIS DYLLA;
▮▮▮▮▮▮▮
JAMES WARREN GARNER;
ROBERT BLAIR GJEVRE; and
BRADY ROBERT LUDUSCHER

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), and Title 21, United States Code, Section 853, all right, title, and interest in any property constituting or derived from proceeds obtained, directly or indirectly as a result of the violations of Title 21, United States Code, Sections 841 and 846, and Title 18, United States Code, Section 1956(h), any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the said violation, and a sum of money equal to the total amount of proceeds obtained as a result of the offenses, including, but not limited to:

- $ 1,785 in United States currency;

- $10,000,000 in United States currency.

11

If any of the forfeitable property as a result of any act or omission of the defendant(s):

    (a)  cannot be located upon the exercise of due diligence;

    (b)  has been transferred or sold to, or deposited with, a third party;

    (c)  has been placed beyond the jurisdiction of the court;

    (d)  has been substantially diminished in value; or

    (e)  has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

7.     Defendant understands the following maximum penalties apply:

Count One

| | |
|---|---|
| Imprisonment: | Life, 15 year minimum-mandatory |
| Fine: | $20 million |
| Supervised Release: | 10 years |
| Special Assessment: | $100 |

Count Four

| | |
|---|---|
| Imprisonment: | 20 years |
| Fine: | $250,000 |
| Supervised Release: | 3 years |
| Special Assessment: | $100 |

12

### Count Five

| | |
|---|---|
| Imprisonment: | Life; minimum-mandatory life |
| Fine: | $2 million |
| Supervised Release: | 3 years |
| Special Assessment: | $100 |

Defendant agrees to pay the Clerk of United States District Court the special assessment on or before the day of sentencing.

8.     Defendant understands that by pleading guilty Defendant surrenders rights, including:

(a)     The right to a speedy public jury trial and related rights as follow:

(i)     A jury would be composed of twelve (12) lay persons selected at random. Defendant and Defendant's attorney would help choose the jurors by removing prospective jurors "for cause," where actual bias or other disqualification is shown; or by removing jurors without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict. The jury would be instructed that Defendant is presumed innocent and that it could not return a guilty verdict unless it found Defendant guilty beyond a reasonable doubt.

(ii)     If a trial were held without a jury, then the Judge would find the facts and determine whether Defendant was guilty beyond a reasonable doubt.

(iii)     At a trial, whether by a jury or Judge, the United States is required to present witness testimony and other evidence against

Defendant. Defendant's attorney can confront and examine them. In turn, the defense can present witness testimony and other evidence. If witnesses for Defendant refuse to appear voluntarily, Defendant can require their attendance through the subpoena power of the Court.

(iv)    At a trial, Defendant has a privilege against self-incrimination; thus, Defendant can decline to testify. No inference of guilt can be drawn from Defendant's refusal to testify. Defendant can choose to testify, but cannot be required to testify.

(b)    Defendant has a right to remain silent. However, under terms of the Plea Agreement, the Judge will likely ask Defendant questions about Defendant's criminal conduct to ensure that there is a factual basis for Defendant's plea.

9.    Defendant understands that by pleading guilty Defendant is giving up all of the rights set forth in the prior paragraph, and there will be no trial. Defendant's attorney has explained those rights, and consequences of Defendant's waiver.

10.    The Court shall impose a sentence sufficient to comply with purposes set forth in the Sentencing Reform Act. In doing so, the Court shall consider factors set forth in 18 U.S.C. § 3553(a) and must consult and consider the United States' Sentencing Commission, Guidelines Manual, (Nov. 2021) (USSG). Defendant understands that the United States Attorney's Office will fully apprise the District Court and the United States Probation and Pretrial Services Office of the nature, scope, and extent of Defendant's conduct, including all matters in aggravation and mitigation relevant to the issue of

sentencing. The United States expressly reserves the right to appeal from an unreasonable sentence.

11.     This Plea Agreement is binding only upon the United States Attorney for the District of North Dakota. It does not bind any United States Attorney outside the District of North Dakota, nor does it bind any state or local prosecutor. They remain free to prosecute Defendant for any offenses under their jurisdiction. This Plea Agreement also does not bar or compromise any civil or administrative claim.

12.     Defendant understands the United States Attorney reserves the right to notify any local, state, or federal agency by whom Defendant is licensed, or with whom Defendant does business, of Defendant's conviction.

13.     The parties agree that the base offense level under the Sentencing Guidelines for Defendant's conduct is life imprisonment. (USSG § 5G1.1(b)).

14.     At sentencing, United States agrees to recommend a 2-level downward adjustment for acceptance of responsibility, provided Defendant has demonstrated a genuine acceptance of responsibility. (USSG § 3E1.1(a)). The United States further agrees to move for an additional 1-level downward adjustment for timely notifying the United States of Defendant's intention to enter a guilty plea, thus permitting the Court and the United States to allocate their resources efficiently. (USSG § 3E1.1(b)).

15.     The parties stipulate and agree that, as of the date of this agreement, Defendant appears to qualify for a 2-level downward adjustment for acceptance of responsibility. However, the government may, in its discretion, contest the adjustment under USSG § 3E1.1(a) should Defendant subsequently fail to continue to accept

responsibility by failing to abide by the conditions of release, if applicable; by providing

false information to the Court, the probation office, or the United States; by unlawfully

using controlled substances; by attempting to obstruct justice; by breaching this Plea

Agreement; or by acting in a way that is inconsistent with, or failing to act in any way

that is consistent with the granting of the adjustment under USSG § 3E1.1(a).

16.     Neither the Court nor the Probation Office is a party to the Plea Agreement.

Neither the Court nor the Probation Office is bound by the Plea Agreement as to

determining the Sentencing Guideline range. The Court may depart from the applicable

guidelines range if the Court, on the record, states factors not contemplated by the

Sentencing Guidelines' Commission to justify the departure. Both parties reserve the

right to object to any departure. See USSG § 1B1.1, comment. (n.1) (defines

"departure"). There may be other adjustments the parties have not agreed upon.

17.     At sentencing, the United States will:

(a)     Recommend a sentence at the low end of the applicable Guideline

range, or the minimum mandatory, whichever is greater; and

(b)     Move to dismiss the Counts Two and Eight of the Third Superseding

Indictment.

18.     Defendant acknowledges and understands that if Defendant violates any

term of this Plea Agreement, engages in any further criminal activity, or fails to appear

for sentencing, the United States will be released from its commitments. In that event,

this Plea Agreement shall become null and void at the discretion of the United States, and

Defendant will face the following consequences: (1) all testimony and other information

16

Defendant has provided at any time to attorneys, employees, or law enforcement officers of the government, to the Court, or to the Federal Grand Jury, may be used against Defendant in any prosecution or proceeding; and (2) the United States will be entitled to reinstate previously dismissed charges and/or pursue additional charges against Defendant and to use any information obtained directly or indirectly from Defendant in those additional prosecutions. Nothing in this agreement prevents the United States from prosecuting Defendant for perjury, false statement(s), or false declaration(s), if Defendant commits such acts in connection with this agreement or otherwise.

19.     Defendant acknowledges the provisions of Title 18, United States Code, Sections 2259 and 3663A, which require the Court to order restitution. Defendant agrees to pay restitution as may be ordered by the Court. Defendant acknowledges and agrees that the Court will order Defendant to make restitution for all loss caused by Defendant's conduct, regardless of whether counts of the Indictment will be dismissed as part of this Plea Agreement. Defendant further agrees to grant the United States a wage assignment, liquidate assets, or complete any other tasks the Court finds reasonable and appropriate for the prompt payment of any restitution or fine ordered by the Court.

20.     The United States will file a Supplement in this case, as is routinely done in every case, even though there may or may not be any additional terms. Defendant and Defendant's attorney acknowledge that no threats, promises, or representations exist beyond the terms of this Plea Agreement.

21.     **Defendant's Waiver of Appeal**. Defendant acknowledges having been advised by counsel of Defendant's rights to appeal the conviction or sentence in this case,

17

including the appeal right conferred by 18 U.S.C. § 3742, and to challenge the conviction

or sentence collaterally through post-conviction proceedings, including proceedings

under 28 U.S.C. § 2255. Defendant understands these rights, and in exchange for the

concessions made by the United States in this plea agreement, Defendant hereby

knowingly and voluntarily waives these rights, except as specifically reserved herein.

Defendant's waiver of these rights includes, but is not limited to, a waiver of all rights to

appeal or to collaterally attack:  Defendant's conviction or sentence; all non-jurisdictional

issues; any assessment, restitution or forfeiture order; the constitutionality of the

applicable guidelines; and the constitutionality of the statute(s) to which Defendant is

pleading guilty or under which Defendant is sentenced, or to argue that the admitted

conduct does not fall within the scope of the statute(s). Defendant reserves the right to

appeal a sentence of imprisonment imposed above the upper end of the applicable

guidelines range and the right to appeal or to collaterally attack the conviction or sentence

based on a claim of ineffective assistance of counsel that challenges the validity of the

guilty plea or this waiver.

22.	By signing this Plea Agreement, Defendant further specifically waives

Defendant's right to seek to withdraw Defendant's plea of guilty, pursuant to Federal

Rules of Criminal Procedure 11(d), once the plea has been entered in accordance with

this agreement. The appellate court will enforce such waivers. Defendant agrees that any

attempt to withdraw Defendant's plea will be denied and any appeal of such denial

should be dismissed.

18

23.    The Assistant United States Attorney and attorney for Defendant agree to abide by the provisions of Rule 32(f) of the Federal Rules of Criminal Procedure. The attorneys acknowledge their obligation to use good-faith efforts to resolve any disputes regarding the Presentence Investigation Report (PSIR) through a presentence conference or other informal procedures.

24.    Defendant understands that by pleading guilty he will be convicted, and that any individual convicted who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant's attorney has explained this consequence of his guilty plea.

25.    Defendant acknowledges reading and understanding all provisions of the Plea Agreement. Defendant and Defendant's attorney have discussed the case and reviewed the Plea Agreement. They have discussed Defendant's constitutional and other rights, including, but not limited to, Defendant's plea-statement rights under Rule 410 of the Federal Rules of Evidence and Rule 11(f) of the Federal Rules of Criminal Procedure.

AGREED:                                        MAC SCHNEIDER
                                               United States Attorney

Dated: _February 10, 2023_____

                                               By: CHRISTOPHER C. MYERS
                                               Assistant United States Attorney

Dated: _Feb. 9 2023_____

                                               MACALLA LEE KNOTT
                                               Defendant

Dated: _February 9, 2023_____

                                               TANYA JOHNSON MARTINEZ
                                               Attorney for Defendant

19